■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTOPHER SIMPSON, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Owens, J.), rendered September 6, 1984, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statement to the police.

Ordered that the judgment is affirmed.

Based upon the record of the suppression hearing, we conclude that the court did not make any evidentiary rulings which foreclosed the defense counsel from presenting proof at the hearing as to whether the defendant's right to counsel had indelibly attached prior to his arrest. Sufficient evidence was adduced from which the hearing court could determine the issue. The law is clear that the indelible and nonwaivable right to counsel arises only after an accusatory instrument has been filed, as this is the means by which a criminal action

is formally commenced *(see,* CPL 1.20 [1], [8], [17]; *People v Samuels,* 49 NY2d 218, 221). In the present case, the defendant does not claim that an accusatory instrument had been filed at the time he gave his statement to the police. The arresting police officer testified that no arrest warrant had actually been issued prior to the defendant's arrest, and therefore it cannot be presumed that an accusatory instrument was previously filed *(see,* CPL 120.10, 120.20; *cf. People v Howard,* 106 AD2d 663). In any event, the court certainly did not prevent the defendant from submitting, at the appropriate time, whatever proof he may have had in support of his motion to suppress the statement.

The defendant contends that there was significant judicial activity even though no accusatory instrument was filed, thus implicating his right to counsel. We conclude there was no significant judicial activity. Further, the defendant waived any right to counsel before he spoke to the police in connection with the murder.

The defendant further contends that certain errors committed by the trial court deprived him of a fair trial. The first claim concerns the testimony of Ronnie Sealy, an eyewitness to the crime, who was permitted to identify the defendant in open court although he never participated in any pretrial identification proceedings. We find this argument to be unpersuasive for several reasons. First, a criminal defendant does not have a constitutional right to participate in a lineup whenever he requests one *(see, United States v Williams,* 436 F2d 1166, 1168-1169, *cert denied* 402 US 912). Additionally, the record shows that defense counsel thoroughly explored the weaknesses in Sealy's testimony during cross-examination and argued each one to the jury during his summation. The court had even given the defendant the option of having Sealy view him in the holding pen with other male black inmates, outside the presence of the jury, to simulate the general reliability of a lineup. The defendant rejected this option, however, and chose instead to appear in court. As a result of his outburst at the start of the trial, the defendant appeared in court in handcuffs. At no time did defense counsel suggest any alternative identification procedure that would have been less suggestive under the circumstances. In any event, even if it was improper to allow Sealy to identify the defendant in this manner, the error was harmless beyond a reasonable doubt in view of the overwhelming evidence of guilt presented through the testimony of the People's other witnesses *(see, United*

*States v Archibald,* 734 F2d 938, 943, *mod* 756 F2d 223; *cf. People v Powell,* 105 AD2d 712, *affd* 67 NY2d 661).

The defendant also urges that the court improperly denied him access to the Family Court records containing the previous juvenile delinquency adjudications of the eyewitness Michael Mims, thereby depriving him of his constitutional right to confront a witness testifying against him. On the basis of the instant record, however, it appears that the defendant never sought to subpoena these records and instead merely requested that the District Attorney's office produce a copy of them, if it possessed these records, which it apparently did not. In any event, since defense counsel was able to elicit from Mims the facts and circumstances underlying these prior adjudications, which was all he was permitted to do by law *(see, People v Brailsford,* 106 AD2d 648, 650; *People v Hunter,* 88 AD2d 321), the jury was sufficiently apprised of the witness's criminal background for the purpose of assessing his credibility, and any error committed by the court with respect to this issue was harmless beyond a reasonable doubt *(see, People v Jarvis,* 111 AD2d 262). Thompson, J. P., Bracken, Rubin and Spatt, JJ., concur.