Chief Judge Kaye
(dissenting). Because the majority misapplies CPL 710.30,1 respectfully dissent.
CPL 710.30 (1) (b) provides:
"Whenever the people intend to offer at a trial * * * (b) testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered” (emphasis added).
Late notice is permitted only upon a showing of "good cause” (CPL 710.30 [2]).
It is clear from the statute that defendant must be served with notice of intention whenever (1) the People intend to offer testimony at trial (2) regarding an observation of the defendant at the time or place of the offense (3) by a witness who has previously identified defendant. (See also, CPL 710.20 [6] [describing type of potential identification evidence subject to suppression].) As a brief review of the facts establishes, once the People determined to use Gray’s testimony, CPL 710.30 applied.
Days before trial commenced, the People for the first time informed the court of their intent to offer testimony from Arthur Gray that identified defendant as the assailant. In response to defendant’s objection that the People had failed to comply with the notice requirements of CPL 710.30, the People offered the explanation that Gray had only come forward with a "positive” identification of defendant in recent days. A Wade hearing was then held.
The majority is simply wrong when it states that the Wade hearing concentrated "solely on Gray’s potential testimony at trial,” concluding that no pretrial identification procedure took place within the meaning of CPL 710.30. To the contrary, the hearing court stated, "[tjhe purpose of our Wade hearing today is to make sure that if [Gray] seeks to make an in-court identification during the course of this trial * * * that comes from his recollection and not any procedures * * * back when the pictures were being shown to him.”
*590 The hearing testimony established that on the night of the shooting Gray was unable to identify anyone from the numerous computerized photographs he was shown. It was uncertain whether defendant’s picture was even included in that array. Several days later, however, Gray was shown just six photographs. Upon viewing defendant’s photograph, as he later testified, he saw "the person, the face that was from two nights ago.” He selected defendant’s photograph, telling the police officer that "it looks like” the perpetrator although he "can’t be sure” and "can’t get involved” because he was going away to college. After the viewing, Gray and another witness compared their experiences and learned that both had selected defendant’s photograph from the array. More than a year later, just prior to trial, the People determined — under circumstances not fully explained — that Gray now believed he could identify defendant. At that point, the People decided to offer his testimony at trial, and provided defendant with notice of that intent.
At the conclusion of the Wade hearing, the court stated that it was considering admissibility of "potential testimony regarding an observation made of the defendant on an occasion relevant to this case.” It summarized the respective burdens of proof concerning a pretrial identification procedure and made findings of fact concerning the viewing of the photographic array, concluding the procedure was not unduly suggestive.
Unquestionably, the People intended to offer Gray’s testimony at trial once he notified them that his identification was certain. Unquestionably, Gray’s prospective testimony concerned "an observation of the defendant * * * at the time or place of the commission of the offense.” Unquestionably — as the hearing court determined — Gray had identified defendant previous to trial. These facts brought Gray’s testimony within the ambit of CPL 710.30, which by its terms applies whenever the People intend to offer such testimony, not just within the first 15 days after arraignment.
In light of the findings of fact and conclusions of law concerning the suggestiveness of the pretrial identification procedure, it is puzzling indeed that the majority concludes no pretrial identification took place here, and that CPL 710.30 did not apply to this testimony. This is the sort of late notice that the statute seeks to prevent, and to excuse only if there is good cause.
In People v O’Doherty (70 NY2d 479), we held that where *591 the People do not establish good cause for delay, it is error to permit late notice and admit such evidence at trial. Lack of prejudice to a defendant resulting from the delay "does not obviate the need for the People to meet the statutory requirement of good cause before they may be permitted to serve a late notice” (id., at 481). Acknowledging a legislative policy determination that the sanction of preclusion would foster efficient conduct of criminal prosecutions, we emphatically rejected the People’s complaint that preclusion is not "an acceptable price to pay to achieve the desired goals” (70 NY2d, at 489). The majority now retreats from O’Doherty by permitting late notice of an identification without a showing of good cause simply because the People did not intend at the outset to use that testimony.
It is to compel the People to act with efficiency and foresight that CPL 710.30 permits late notice only upon a showing of good cause. Because "good cause” is the sole standard for determining whether identification testimony should be permitted notwithstanding late notice, none of the other considerations put forward by the majority serves to excuse the People’s late notice. In particular, the fact that a Wade hearing was held here on the admissibility of Gray’s testimony did not excuse late notice. Although CPL 710.30 (3) provides that a defendant who has moved to suppress evidence may not challenge a failure to provide timely notice, that exception is inapplicable where — as here — the defense unsuccessfully moved to preclude for late notice, and the suppression hearing was held on the court’s own motion (People v Amparo, 73 NY2d 728). In approving the "procedural safeguard” of a Wade hearing as a corrective to late notice, the majority — ignoring our holding in Amparo — creates an alternative remedy for violation of the notice requirement. The sole remedy authorized by statute, however, is preclusion.
While the People may have been able to establish that Gray’s change of heart as to the certainty of his identification constituted good cause, no such claim was made. The People’s present claim concerning the circumstances leading to their change of intention about Gray’s testimony was not fully presented. Instead, the People asserted they were altogether exempt from any notice requirements, despite the plain language of the statute. Accordingly, the People failed to meet their burden of establishing good cause for late notice.
It was error to deny defendant’s motion to preclude upon a *592 determination that defendant was not prejudiced, and I would therefore reverse the Appellate Division order and order a new trial.
Judges Smith, Levine and Ciparick concur with Judge Bellacosa; Chief Judge Kaye dissents and votes to reverse in a separate opinion in which Judges Simons and Titone concur.
Order affirmed.